1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RAUL A. VALENCIA,                          Case No.   1:19-cv-00398-NONE-JDP

12                    Petitioner,               FINDINGS AND RECOMMENDATIONS TO
                                                DENY PETITION FOR A WRIT OF HABEAS
13          v.                                  CORPUS AND DECLINE TO ISSUE A
                                                CERTIFICATE OF APPEALABILITY
14   JIM ROBERTSON,
                                                OBJECTIONS DUE WITHIN 30 DAYS
15                    Respondent.
                                                ECF No. 1
16

17          Petitioner Raul A. Valencia, a state prisoner without counsel, petitions for a writ of habeas

18   corpus under 28 U.S.C. § 2254.  ECF No. 1.  Petitioner claims that: (1) his trial and appellate

19   counsel were ineffective; (2) the prosecutor engaged in misconduct; and (3) the California Court

20   of Appeal erred when it denied him habeas relief.  *See generally* ECF No. 1.  For the reasons set

21   forth below, we recommend that the court deny the petition and decline to issue a certificate of

22   appealability.

23   **I.      Background**

24          In 2013, a Stanislaus County jury convicted petitioner of three counts of robbery.  ECF

25   No. 20 at 8.  The jury also found that petitioner personally used a firearm in two of the robberies

26   and that his co-defendant was armed during the other robbery.  *Id*.  Petitioner was sentenced to

27   thirty-two years and eight months in state prison.  *Id*.  We set forth below the pertinent facts, as

28

                                        1

1  summarized by the California Court of Appeal.[1]  A presumption of correctness applies to these

2  facts.  *See* 28 U.S.C. § 2254(e)(1); *Crittenden v. Chappell*, 804 F.3d 998, 1010-11 (9th Cir.

3  2015).

> On January 14, 2013, four robberies were reported over a roughly three-hour period of time in Stanislaus County.  The first robbery was reported around 5:17 p.m. and occurred at a Millennium Food and Liquor.  The victim of that robbery and a separate witness told the police that two suspects approached the store.  One stood at the door while the other approached the victim, pointed a gun at him, and took both money and alcohol.  A third witness, who was not contacted by the police, allegedly told the victim that the suspects fled in a black Volvo.  Surveillance cameras at the store captured images of the suspects and of a black car leaving the scene under circumstances suggesting the car was used by the suspects in the robbery.  A picture was taken of the surveillance video, showing the black car, and was emailed to other officers.
>
> The second robbery was reported at approximately 5:31 p.m. and occurred at a Golden West Market.  This robbery again involved two male suspects, one of which was armed with a gun.  Money was taken from the register.
>
> The third robbery was reported at approximately 8:00 p.m. and occurred at a Country Market.  Once again a gun was used.
>
> The fourth robbery was reported at approximately 8:33 p.m. and occurred at a Viva Market.  The robbery was done by two suspects, one of which had a gun.  The suspects fled in a used, but newer, black car, which was believed to be a Volvo.
>
> At approximately 9:04 p.m., Modesto Police Officer William Jones and his partner, Officer Watson, were patrolling an area very near to three of the reported robberies.  Officers Jones and Watson had received a notice to be on the lookout for a black Volvo and had received and viewed the image of the vehicle emailed after the first robbery.  As Officer Jones was driving, he saw a black Volvo approach from the opposite direction.  This was the first black Volvo Officer Jones had seen while on patrol and it closely matched both the description and the picture of the car believed to be involved in the reported robberies.  Although the windows were tinted, Officer Jones believed he saw three individuals in the car.  Based on these facts, Officer Jones initiated a traffic stop on the vehicle.

---

[1] These facts are taken from the Court of Appeal's opinion on petitioner's direct appeal of his conviction, in which petitioner claimed that the trial court erred when it denied his motion to exclude evidence.  ECF No. 21-6.  His direct appeal was rejected on the merits in a reasoned decision and he did not seek California Supreme Court review.  ECF No. 21-8.  Petitioner then sought habeas relief in the state courts, exhausting the claims presented here.  ECF No. 20 at 8-9.

2

1

2   *People v. Valencia*, No. F0716202017, Cal. App. Unpub. LEXIS 884 (Feb. 7, 2017); ECF No.

3   21-8.

4       Officers Jones and Watson found Patricio Sandoval, Antonia Valencia, and petitioner

5   inside the car that they pulled over.  ECF No. 21-5 at 58.  The officers searched the suspects and

6   the vehicle, finding cash on all suspects, including $675 on petitioner, as well as a handgun, gray

7   jacket, and, in the trunk, a bottle of Crown Royal.  *Id*. at 59-64.  The suspects were handcuffed

8   and placed in a police patrol vehicle.  *Id*. at 12-13.  They were then individually removed from the

9   vehicle, while handcuffed, and shown to the victims.  *Id.*

10      All four of the witnesses were given a *Simmons* admonishment and asked to identify any

11  persons involved in the robbery. [2]  *Id*. at 10, 20, 40, 88.  Nagi Saad, the first witness, did not

12  identify any of the suspects as involved in the robbery.  *Id*. at 97.  Bupinder Singh, the second

13  witness, identified Sandoval and petitioner as two of the robbers and stated that he was "100%"

14  certain about his identifications.  *Id*. at 92.  Singh stated that he did not recognize Antonio

15  Valencia.  *Id*.  At trial, Singh was unable to identify petitioner as one of the robbers.  *Id*. at 123.

16      The third witness, Fares Alwarafi, in addition to being shown the suspects, was shown the

17  gray jacket and handgun found in the back of the suspects' car.  ECF No. 21-5 at 21-22.  Alwarafi

18  identified the jacket as the one worn by the gunman and the gun as that used in the robbery.  *Id*. at

19  22-23.  Alwarafi was unsure whether the suspects he was shown were involved in the robbery.

20  *Id*. at 23.  At trial, Alwarafi testified that the gunman was wearing a gray jacket, but he did not

21  identify petitioner as an individual involved in the robbery.  *Id*. at 177.

22      A police officer interviewed witness Ana Verduzco at the scene of the robbery.  ECF No.

23  21-5 at 10-11.  The officer showed Verduzco photographs of the suspects, possibly describing

24  [2] In California, it is common to give a *Simmons* admonishment to a witness before he or she is
    asked to identify a criminal suspect.  *See Simmons v. United States*, 390 U.S. 377 (1968).  The
25  admonishment states: "You will be asked to look at a subject.  The fact that the subject is shown
    to you should not influence your judgment.  You should not conclude or guess that the subject is
26  the person who committed the crime.  You're not obligated to identify anyone.  It is just as
    important to free innocent persons from suspicions as to identify guilty parties.  Please do not
27  discuss the case with other witnesses, nor indicate in any way that you have identified someone."
    ECF No. 21-5 at 89.
28

1   them as individuals who "had just committed a robbery in the Modesto area." *Id*. There is no

2   evidence in the record that Verduzco made a positive identification of any of the suspects during

3   this photographic lineup. Verduzco was then brought to the scene of the traffic stop. *Id*. at 12.

4   The police officer gave her a *Simmons* admonishment and asked her to identify any persons

5   involved in the robbery. *Id*. at 10. Verduzco stated that she believed petitioner was one of the

6   robbers, but she was uncertain. *Id*. at 14. However, she stated that petitioner's build and clothing

7   matched that of one of the robbers. At trial, Verduzco was unable to identify petitioner as one of

8   the robbers. *Id*. at 129.

9   **II.    Discussion**

10      A federal court can grant habeas relief when a petitioner shows that his custody violates

11   federal law. *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75

12   (2000).[3]  Section 2254 of Title 28, as amended by the Antiterrorism and Effective Death Penalty

13   Act of 1996 ("AEDPA"), governs a state prisoner's habeas petition. *See Harrington v. Richter*,

14   562 U.S. 86, 97 (2011). To decide a § 2254 petition, a federal court examines the decision of the

15   last state court to have issued a reasoned opinion on petitioner's habeas claims. *See Wilson v.

16   Sellers*, 138 S. Ct. 1188, 1192 (2018). In general, § 2254 requires deference to the state court

17   system that produced the relevant conviction and sentence.

18      Under AEDPA, a petitioner can obtain relief on federal habeas claims that have been

19   "adjudicated on the merits in state court proceedings" only if the state court's adjudication

20   resulted in a decision (1) "contrary to, or involved an unreasonable application of, clearly

21   established Federal law, as determined by the Supreme Court of the United States," or (2) "based

22   on an unreasonable determination of the facts in light of the evidence presented in the State court

23   proceeding." 28 U.S.C. § 2254(d). The petitioner's burden is great. *See Harrington v. Richter*,

24   562 U.S. 86, 103 (2011) ("[To gain relief under § 2254(d)(1), a petitioner] must show that the

25   state court's ruling . . . was so lacking in justification that there was an error well understood and

26   ――――――――――――――

27   [3] This court has jurisdiction over the petition pursuant to 28 U.S.C. § 2241(a): "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."

28

4

1   comprehended in existing law beyond any possibility for fairminded disagreement."); *see Davis*

2   *v. Ayala*, 576 U.S. 257, 271 (2015) (quoting § 2254(e)(1)) ("[Under § 2254(d)(2), s]tate-court

3   factual findings . . . are presumed correct; the petitioner has the burden of rebutting the

4   presumption by 'clear and convincing evidence.'").

5        If obtaining habeas relief under § 2254 is difficult, "that is because it was meant to be."

6   *Richter*, 562 U.S. at 102.  As the Supreme Court has put it, federal habeas review "disturbs the

7   State's significant interest in repose for concluded litigation, denies society the right to punish

8   some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises

9   of federal judicial authority." *Id.* at 103 (citation omitted).  Our habeas review authority serves as

10  a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for

11  ordinary error correction through appeal." *Id.* at 102-103.

12       Most of petitioner's current claims—specifically, his claims of ineffective assistance of

13  trial and appellate counsel and prosecutorial misconduct— were presented to the Stanislaus

14  County Superior Court in a habeas petition.  ECF No. 21-9.  That court rejected the claims on the

15  merits in a reasoned decision.  ECF No. 21-10.  The California Court of Appeal denied the

16  petition "without prejudice to petitioner demonstrating exhausting [sic] his legal remedies by first

17  petitioning the superior court where he was convicted,"[4] ECF No. 21-12, and the California

18  Supreme Court summarily denied review, ECF No. 21-14.  Because the superior court issued the

19  last reasoned decision on the claims, we review the decision of that court, applying the deferential

20  standard of § 2254.  *See Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003) (explaining that

21  "[b]ecause, here, neither the court of appeal nor the California Supreme Court issued a reasoned

22  opinion on the merits of this claim, we look to the trial court's decision" on federal habeas

23  review).

24       The lone additional claim, that the California Court of Appeal erred when it denied

25  petitioner habeas relief, was summarily rejected by the California Supreme Court.  ECF No. 21-

26

27  ---

[4] It appears that petitioner raised the same claims in his superior court and Court of Appeal habeas petitions.  ECF Nos. 21-9, 21-11.  The Court of Appeal did not identify which claims were

28  unexhausted.

14.  Because the California Supreme Court summarily rejected this claim, we must conduct an independent review of the record to determine whether the state court's final resolution of the case constituted an unreasonable application of clearly established federal law; nonetheless, we give deference under AEDPA to that decision.  *See Greene v. Lambert*, 288 F.3d 1081, 1088-89 (9th Cir. 2002); *Himes v. Thompson*, 336 F.3d 848, 853 & n.3 (9th Cir. 2003) ("Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable.").

### A.    Ineffective Assistance of Counsel

Petitioner argues that his trial counsel was ineffective because he: (1) failed to call a witness who had described the gunman as a "white male with medium length hair," ECF No. 1 at 19; (2) failed to elicit testimony from Singh that he had previously been unable to identify petitioner, *id*.; (3) unnecessarily asked witnesses whether petitioner had an accent, *id*.; (4) failed to highlight discrepancies between the witnesses' testimony during the investigation and at trial, *id*. at 20-21, 54, 58, 67, 73, 85; (5) had a conflict of interest, *id*. at 21-22, 95-97; and (6) improperly conceded probable cause at the preliminary hearing and at a hearing to set aside a charge,[5] *id*. at 22, 98—and, additionally, (7) that his appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel on appeal, *id.* at 107.

The two-step inquiry from *Strickland v. Washington*, 466 U.S. 668, 687 (1984), guides our review.  Under *Strickland*, a criminal defendant first must show some deficiency in performance by counsel that is "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment."  *Id.*  Second, the defendant must show that the deficient performance caused him prejudice.  *Id.*  This requires petitioner to show "that there

---

[5] Additionally, petitioner makes the general claims that his trial counsel "failed to proffer any defense whatsoever," ECF No. 1 at 21, and "failed to investigate . . . and prep for trial in all regards," *id*. at 21.  We reject these arguments—the record reveals that his counsel investigated his case, prepared for trial, and mounted a defense.  Petitioner also appears to claim that he was forced to proceed with his counsel against his wishes because he is a "layman of law and had no other option."  *Id*. at 22.  Although petitioner may have been unsatisfied with his appointed counsel, petitioner has given the court no reason to think that his constitutional rights were violated by his counsel's representation, and accordingly we reject his claim.

1    is a reasonable probability that, but for counsel's unprofessional errors, the result of the

2    proceeding would have been different." *Id.* at 694.  On habeas review, when filtered through

3    § 2254(d)'s fairminded-jurist standard, the *Strickland* requirements become even more

4    deferential, and we must ask "whether there is any reasonable argument that counsel satisfied

5    *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.  If there is even one reasonable

6    argument that counsel did not violate the *Strickland* standard—even if the state court has not

7    identified the argument—then the petitioner cannot obtain habeas relief.  *See id.* at 106.

8         In general, strategic choices made by counsel receive a "heavy measure of deference."

9    *See Strickland*, 466 U.S. at 690-91 (explaining that "strategic choices made after thorough

10   investigation of law and facts relevant to plausible options are virtually unchallengeable; and

11   strategic choices made after less than complete investigation are reasonable precisely to the extent

12   that reasonable professional judgments support the limitations on investigation").  "[C]ounsel has

13   a duty to make reasonable investigations or to make a reasonable decision that makes particular

14   investigations unnecessary." *Id*.  In addressing petitioner's counsel's performance, we must ask

15   whether his strategic choices were reasonable under "prevailing professional norms." *Id*. at 688.

### 1.    Failure to call a witness

17        Petitioner argues that his counsel was ineffective when he failed to call a witness named

18   Corbin who had described the gunman who robbed Singh as a "white male with medium length

19   hair." ECF No. 1 at 19.  The superior court rejected petitioner's claim on the merits in a reasoned

20   decision, which we review under the deferential standard of § 2254.  The superior court found

21   that petitioner had failed to explain why the jury would have credited Corbin's testimony over the

22   testimony of Singh, and accordingly that petitioner had failed to show that he was prejudiced by

23   the absence of the testimony.  ECF No. 21-10 at 2.

24        To establish prejudice from the failure to call a witness, petitioner would need to show

25   that the witness was likely to have been available to testify, the witness would have testified in

26   support of the petitioner, and the witness' testimony would have created a reasonable probability

27   that the jury would have reached a verdict more favorable to the petitioner.  *See Alcala v.*

28   *Woodford*, 334 F.3d 862, 872-73 (9th Cir. 2003).  Petitioner has failed to meet the first prong of

*Alcala*.  At the hearing on petitioner's motion for a new trial, the prosecution stated that they

Corbin may have had evidence which would assist in the state's case and had attempted to secure

Corbin as a witness but were unsuccessful.  ECF No. 21-5 at 259.  Petitioner has failed to show

that his own counsel would have fared better in securing Corbin's presence at trial, much less that

Corbin would have given the testimony that petitioner sought and that the testimony would have

created a reasonable probability of a more favorable verdict.  Accordingly, the undersigned

recommends that petitioner's claim be denied.

### 2.    Failure to impeach Singh

Petitioner claims that his counsel was ineffective because he failed to elicit from Singh

testimony that Singh had previously been unable to identify petitioner.  ECF No. 1 at 19.  The

superior court rejected petitioner's claim on the merits in a reasoned decision, which we review

under the deferential standard of § 2254.  The superior court found that petitioner's counsel had

"spent large amounts of time" exploring the issue of identity when questioning witnesses and that

petitioner had failed to show how additional questioning would have changed the jury's verdict.

ECF No. 21-10 at 1.

Lawyers have "no duty to pursue investigations likely to be fruitless or even harmful," and

"they have no duty to inject evidence likely to open the door to additional evidence that would be

harmful."  *Stanley v. Schriro*, 598 F.3d 612, 636-37 (9th Cir. 2010); *see Bell v. Cone*, 535 U.S.

685 (2002) (holding that counsel made a reasonable strategic decision to waive closing argument

because it prevented unfavorable evidence from being presented to the jury).

This issue was considered at a post-trial hearing on petitioner's motion for a new trial, at

which petitioner recounted a conversation he had with his counsel during the trial.  ECF No. 21-5

at 243.  Petitioner stated that he had confronted his trial counsel and had asked why he did not

attempt to highlight that Singh had not been able to identify petitioner at trial.[6]  *Id*. According to

petitioner, his counsel responded, "What if he would have said it was you?"—revealing that

---

[6] Singh had identified petitioner as a robber during the field identification.  ECF No. 21-5 at 91-
92.  However, at trial, Singh stated that he was only able to identify Sandoval as a robber; he did
not identify petitioner.  *Id*. at 242

counsel had made a strategic decision not to highlight this discrepancy in order to avoid potentially harmful testimony. *Id.* At the post-trial hearing, moreover, his counsel took many opportunities to highlight discrepancies in Singh's testimony during closing argument. *See* ECF No. 21-5 at 142-47, 151. Giving the deference to counsel's strategic choices that is required under *Strickland*, we cannot find that petitioner's counsel's actions were deficient.

Neither can we find that this counsel's actions prejudiced petitioner. Indeed, it seems quite possible that the line of questioning petitioner sought would have hurt him. As it was, the jury witnessed Singh's inability to identify petitioner at trial, which could reasonably be expected to cast doubt on the reliability of Singh's initial identification of petitioner. Petitioner has failed to show that the outcome of the trial would have been better for petitioner had his counsel attempted to impeach Singh with his earlier testimony.

### 3. Questioning about the gunman's accent

Petitioner argues that his counsel's line of questioning regarding his accent, or lack thereof, was unnecessary. ECF No. 1 at 19. The superior court rejected this argument on the merits in a reasoned decision, and so we apply the deferential standard of § 2254. The superior court found that any error by petitioner's counsel was not the sort of "tactical error" warranting reversal. ECF No. 21-10 at 1.

Attorneys are not expected to be "flawless," and they may not be "faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington v. Richter*, 562 U.S. 86, 110 (2011). The entire performance of the attorney must be considered; it is "difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Id.* at 111.

During the police officers' investigation, Verduzco told officers that the gunman "sounded like a Mexican guy." ECF No. 21-4 at 234. At trial, counsel elicited testimony from Singh and Verduzco regarding petitioner's accent and both testified that the robber spoke without an accent.[7] ECF No. 21-4 at 164-66, 234. When it became clear that neither witness recalled

---

[7] A police officer also testified that, when questioned by the prosecution whether petitioner had an accent, there was "nothing that I recall out of the ordinary" about petitioner's speech. ECF

1   petitioner having an accent, petitioner's counsel discontinued the line of questioning.

2   Considering Verduzco's prior statements, petitioner's counsel could have reasonably expected the

3   witnesses to testify that the gunman had an accent.  We cannot find that petitioner's counsel's

4   performance was deficient for this "reasonable calculation."

5       Moreover, even if these lines of questioning constitute error, petitioner has failed to show

6   any prejudice arising from them.  The jury did not hear petitioner speak during the trial, and we

7   have no indication that the jury knew whether he had an accent or not.[8]  Petitioner has failed to

8   show that the witnesses' testimony served to inculpate him, and therefore he has failed to show

9   that the outcome would have been better for petitioner absent these questions.

10          **4.      Discrepancies between the witnesses' testimony during the investigation**

11                  **and at trial**

12      Petitioner argues that his counsel was ineffective because he failed to highlight various

13  discrepancies between the witnesses' testimony during post-robbery interviews with police

14  officers, at the in-field identifications, and during trial.  Specifically, petitioner argues that his

15  counsel should have: highlighted that petitioner's clothing at arrest was different than the

16  gunman's clothing during the robbery, as evidenced by a surveillance video and a photo, ECF No.

17  1 at 20; highlighted discrepancies in Alwarafi's testimony regarding petitioner's clothing, *id*. at

18  20-21, 58, 54; cross-examined detectives Rivera and Gonzales concerning differences in the

19  gunman's clothing described by eyewitnesses and petitioner's clothing at arrest, *id*. at 20; and

20  cross-examined Verduzco on her testimony regarding petitioner's clothing at the photographic

21  lineup and in-field identifications, *id*. at 73, 85.  The superior court rejected petitioner's claim on

22  the merits in a reasoned decision, which we review under the deferential standard of § 2254.  The

23  superior court noted that petitioner's counsel "spent large amounts of time" questioning

24  witnesses' identifications and that petitioner "failed to show how counsel could have done more

25

26

27  _____

    No. 21-5 at 64.

28  [8] Petitioner states that he "never took . . . the stand" during the trial.  ECF No. 1 at 19.

1    to make the point that in some cases the identifications of petitioner as the suspect were not

2    absolute." ECF No. 21-10 at 1-2.

3        Petitioner has not shown deficient performance. Contrary to his assertions, his counsel

4    highlighted the discrepancies between the clothing seen on the gunman and petitioner's clothing

5    at arrest. Defense counsel reminded the jury that Alwarafi only identified the gray jacket after the

6    robbery but did not identify petitioner as the robber during the in-field identification. ECF No.

7    21-5 at 146-47. Petitioner's counsel elicited testimony from Deputy Gonzales that the gunman in

8    the surveillance video wore a covering over his face, a blue sweatshirt, and black pants.[9] *Id.* at 6.

9    On cross examination of Officer Rivera, petitioner's counsel called into doubt the reliability of a

10   still photo taken of the gunman from the surveillance video and moved to strike Rivera's

11   testimony regarding the photo. *Id*. at 54-56. Petitioner also questioned Rivera in an effort to

12   discredit the reliability of the identification of the black Volvo. *Id*. at 59-60.

13       Petitioner's counsel cast doubt on Verduzco's testimony. Shortly after the robbery,

14   Verduzco told an officer that the robber had been wearing a dark sweatshirt, but that she was

15   uncertain whether petitioner was the robber. ECF No. 21-4 at 11, 29. And although petitioner

16   argues that his counsel should have cross-examined Verduzco regarding the photographic lineup,

17   he has neither pointed to any evidence that Verduzco made a positive identification of petitioner

18   during the photographic lineup, nor given any indication that the jury was aware that Verduzco

19   had been shown the photographic lineup.[10] Subsequently, Verduzco was unable to definitively

20   identify petitioner as the gunman at either the in-field identification or trial.[11] ECF No. 21-5 at

21   246. At trial, petitioner's counsel questioned Verduzco about her primary focus on the gun

22

23   _____

24   [9] Petitioner argues that his counsel should have used Gonzales' police report containing
     Alwarafi's post-robbery statements to highlight the discrepancies in Alwarafi's testimony
     regarding the clothing of the gunman. However, petitioner's counsel highlighted the

25   discrepancies in Alwarafi's own testimony—additional testimony regarding the police report
     would have been cumulative. ECF No. 21-5 at 146-47; ECF No. 21-10 at 1.

26   [10] We have only found mention of the photographic lineup at the preliminary hearing and at
     petitioner's post-trial hearing on his motion for a new trial. ECF No. 21-5 at 253.

27   [11] At trial, petitioner's counsel asked Verzduzco, "do you remember what his [robber's] clothes
     looked like?" and Verduzco answered "No, I don't." *Id*. at 247.

28

during the robbery, and she testified that she did not remember much about the appearance of the gunman.  ECF No. 21-4 at 153, 232-34.

In closing, petitioner's counsel urged the jury to "focus on the non-identification . . . focus on the clothing, focus on the descriptions . . . the reasonable doubt . . . [c]arloads of reasonable doubt" and argued that the difference in clothing demonstrated that petitioner was not the robber. ECF No. 21-5 at 156.  He specifically emphasized that "Verduzco said she only recognized the guy with the blue sweatshirt and [petitioner] wasn't wearing that." *Id*.  Petitioner has not shown that his counsel needed to do more to highlight the discrepancies in the witnesses' testimony. Giving deference to counsel's strategic decisions, we cannot find that his choice constituted deficient performance.  Moreover, petitioner has failed to show that he was prejudiced by his counsel's decisions.  The prosecution itself made the jury aware of the difference between the gunman's clothing and petitioner's clothing at the time of his arrest, introducing both surveillance video footage of one of the robberies and a photo of petitioner at the time of his arrest.  The prosecution addressed the difference in clothing during closing arguments, suggesting that petitioner could have changed his clothing between the robbery and arrest.  ECF No. 21-4 at 160; ECF No. 21-5 at 66-67.  The prosecution also made the jury aware of the discrepancies in Alwarafi's testimony, even stating that Alwarafi "may have been mistaken."  ECF 21-5 at 126. And despite the difference in clothing, the jury could have found similarities between the gunman and petitioner—such as similar body frames and heights—probative of his guilt.  At the time of his arrest, petitioner was found with a large amount of cash and a bottle of Crown Royal whiskey—a type of liquor that had been stolen during one of the robberies.  ECF No. 21-5 at 60-63.  Petitioner was found by police officers in a black Volvo with Sandoval, who was identified by every victim as one of the robbers.  *See id*. at 14, 23, 91.  The jury was charged with determining what significance, if any, to accord the discrepancy in clothing, in light of the other evidence presented at trial.  *See United States v. Brady*, 579 F.2d 1121, 1127 (9th Cir. 1978) (noting that "it is the exclusive function of the jury to determine the credibility of the witnesses,

1    resolve evidentiary conflicts and draw reasonable inferences from proven facts").  The

2    undersigned recommends that this claim be denied.

3                    **5.   Counsel Conflict of Interest**

4    Petitioner argues that his counsel had a conflict of interest because he believed that petitioner was

5    guilty.  ECF No. 1 at 21-22, 95-97.  Although the superior court did not explicitly address this

6    claim, we assume that the court rejected the claim on the merits and accordingly give the superior

7    court's decision deference under § 2254.  *See Johnson v. Williams*, 568 U.S. 289, 301 (2013).

8    We cannot find that the superior court's rejection of petitioner's claim was an unreasonable

9    application of clearly established federal law.  A counsel's conflict of interest can violate a

10   defendant's Sixth Amendment rights where the petitioner can show an "actual," not speculative,

11   conflict—and that the conflict "adversely affected his lawyer's performance."  *Cuyler v. Sullivan*,

12   446 U.S. 335, 348 (1980); *see Mickens v. Taylor*, 535 U.S. 162 (2002).  Petitioner has not done

13   so.  We can find no U.S. Supreme Court case that protects a criminal defendant from an attorney

14   who believes him to be guilty.  Moreover, petitioner's only support for his claim that his attorney

15   thought he was guilty is that his counsel stated to him privately, "you did four robberies."  ECF

16   No. 1 at 22.  Petitioner has presented no proof that his counsel's alleged belief presented an actual

17   conflict of interest, much less that this supposed conflict adversely affected his counsel's

18   performance.  Petitioner's claim should be denied.

19                    **6.   Concession of probable cause**

20        Petitioner argues that his counsel was ineffective when he conceded probable cause at the

21   preliminary hearing, ECF No. 1 at 22, 98, and in his motion to set aside his charge for the robbery

22   of Alwarafi, *id*. at 22, 103.  Although the superior court did not explicitly address this claim, we

23   assume that the court rejected it on the merits and accordingly give the superior court's decision

24   deference under § 2254.  *See Williams*, 568 U.S. at 301.  Although "federal habeas corpus relief

25   does not lie for errors of state law," *Estelle v. McGuire*, 502 U.S. 62, 67 (1991), a habeas

26   petitioner can gain relief on an ineffective assistance of counsel claim if he can show both that his

27   attorney was ignorant of "a point of law that [was] fundamental to his case," and that his attorney

28   failed "to perform basic research on that point of state law."  *Hinton v. Alabama*, 571 U.S. 263,

                                                13

274 (2014) (explaining that such a failure is a "quintessential example of unreasonable

performance under *Strickland*").

Here, petitioner has failed to demonstrate that his counsel was ignorant of the relevant

state law—that is, the law governing preliminary hearings and motions to set aside charges.

Under Cal. Penal Code § 872(a), a trial court may "hold a defendant to answer on felony charge"

at the preliminary hearing where there is "sufficient cause to believe that the defendant is guilty."

Sufficient cause exists if facts have been presented that would "lead a man of ordinary caution or

prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused."

*People v. Ortiviz*, 74 Cal. App. 3d 537, 541 (1977).  A finding of sufficient cause "may be based

in whole or in part upon the sworn testimony of a law enforcement officer . . . relating the

statements of declarants made out of court offered for the truth of the matter asserted."  Cal. Pen.

Code § 872(b).  After a defendant has been held to answer for a charge, he can move to set aside

the charge on the theory that he "has been committed without reasonable or probable cause."  Cal.

Pen. Code § 995(a)(2)(B).

Petitioner has failed to show that his counsel's performance was deficient.  At the

preliminary hearing, multiple police officers testified to petitioner's involvement in the robbery,

one of them stating that Singh was "100%" certain of his identification of petitioner shortly after

the robbery.  ECF No. 21-5 at 92.  Petitioner's counsel then stated that Singh's identification was

sufficient for "preliminary hearing purposes" and that the evidence of the robbery of Singh was

"clear."[12]  ECF No. 21-1 at 120-23.  In his motion to set aside the Alwarafi charge, petitioner's

counsel acknowledged that petitioner "was definitively identified as the gunman" in the Singh

robbery.  *Id*. at 187.  Petitioner's counsel's statements were supported by the record; he had no

duty to make futile arguments.  *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir.

2005) (explaining that attorneys have no duty to raise meritless arguments).

---

[12] Notably, at the preliminary hearing petitioner's counsel argued that there was insufficient
evidence to hold petitioner to answer for the robbery of Alwarafi, ECF No. 21-5 at 121, and then
later moved to have this charge dropped, *id*. at 187.  Counsel's actions suggest that that he
attempted to highlight weaknesses in the government's case while also offering the court realistic
assessments.

1    Moreover, petitioner has failed to show how he was prejudiced by his counsel's

2    concession.  Because the evidence of probable cause was sufficient to hold petitioner to answer

3    for the robbery of Singh, the court could have found probable cause despite counsel's concession.

4    And petitioner has failed to show how counsel's brief mention of Singh's positive identification

5    in his motion to set aside the Alwarafi charge had any effect on the outcome of the trial**.**

6                              **7.   Ineffective assistance of appellate counsel**

7    Petitioner argues that his appellate counsel was ineffective because he failed to argue on

8    direct appeal that petitioner's trial counsel was ineffective.  ECF No. 1 at 5, 8, 22, 107.  The

9    superior court rejected petitioner's claim on the merits in a reasoned decision, which we review

10   under the deferential standard of § 2254.  The superior court found that, because petitioner failed

11   to show that his trial counsel was ineffective, he necessarily also failed to show that his appellate

12   counsel was ineffective for failing to argue ineffectiveness on appeal.  ECF No. 21-10 at 3.

13   The superior court's determination was not contrary to clearly established federal law.  A

14   defendant's right to appellate representation does not include a right to present non-viable

15   arguments.  *See McCoy v. Court of Appeals of Wis., Dist. 1*, 486 U.S. 429, 436 (1988); *Morrison*

16   *v. Estelle*, 981 F.2d 425, 429 (9th Cir. 1992) (explaining that appellate counsel cannot be found

17   ineffective for failing to raise an argument that would not have been successful).  Even if

18   petitioner's ineffective assistance of counsel claims had merit, no U.S. Supreme Court decision

19   holds that a "defendant has a constitutional right to compel appointed counsel to press

20   nonfrivolous points requested by the client, if counsel, as a matter of professional judgment,

21   decides not to present those points."  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

22   Here, petitioner's claims of ineffective assistance of trial counsel are meritless; he has

23   failed to meet the requirements of *Strickland*.  We cannot find that his appellate counsel was

24   deficient for failing to argue ineffective assistance of trial counsel, or that petitioner was

25

26

27

28

15

1    prejudiced by appellate counsel's failure to raise this claim.[13]   The undersigned recommends that

2    this claim be denied.

3        **B.    Prosecutorial Misconduct**

4        Petitioner argues that the prosecution knowingly presented false evidence concerning

5    Alwarafi's description of the gunman's clothing.  ECF No. 1 at 7.  The superior court rejected the

6    claim, unconvinced by petitioner's argument that any evidence presented by the prosecution that

7    contradicted the police report must be false.  The court stated that "nothing in the record shows

8    why the information in the police report is the correct version of the facts."  ECF No. 21-10 at 3.

9        We review the superior court's opinion—the last reasoned opinion on this claim—under

10   the deferential standard of § 2254.  *Napue v. Illinois* governs our inquiry into claims that a

11   prosecutor presented false evidence at trial.  360 U.S. 264 (1959).  To prevail on a *Napue* claim,

12   "the petitioner must show that (1) the testimony (or evidence) was actually false, (2) the

13   prosecution knew or should have known that the testimony (or evidence) was actually false, and

14   (3) that the false testimony (or evidence) was material."  *Hein v. Sullivan*, 601 F.3d 897, 908 (9th

15   Cir. 2010) (quoting *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003)).  False

16   evidence is "material" when there is a "reasonable likelihood that the evidence could have

17   affected the judgment of the jury."  *United States v. Bagley*, 473 U.S. 667, 680 (1985); *see United*

18   *States v. Agurs*, 427 U.S. 97, 104 (1976).

19       According to the police report, Alwarafi initially told officers that the gunman wore a blue

20   sweatshirt.  ECF No. 1 at 7.  At trial, however, Alwarafi testified that the gunman was wearing a

21   gray jacket.  *Id*. at 62.  In the closing statement, the prosecutor stated that "there are differences

22   here in Mr. Alwarafi's testimony."  ECF No. 12-5 at 125.  The prosecutor theorized that perhaps

23   petitioner had dressed in layers that day or that Alwarafi was mistaken about petitioner's clothes

24   altogether.  *See id*. at 126.  The prosecutor then urged the jury to "look at the way . . . Alwarafi

25   testified" and to "consider how that testimony was."  *Id*. at 127.

26

27

28   _____
     [13] Petitioner raised this claim unsuccessfully in his state habeas petitions

Petitioner has failed to show that the evidence presented by the prosecutor at trial was "actually false." Inconsistent witness statements do not establish a *Napue* violation. *See United States v. Bingham*, 653 F.3d 983, 995 (9th Cir. 2011); *United States v. Croft*, 124 F.3d 1109, 1119 (9th Cir. 1997) ("The fact that a witness may have made an earlier inconsistent statement . . . does not establish that the testimony offered at trial was false."); *United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993) (finding no prosecutorial misconduct where "[a]t most, the prosecutor presented contradictory testimony"). Alwarafi's inconsistent statements were addressed directly by the prosecutor, and there is no proof that the prosecutor mischaracterized the testimony. Because petitioner has failed to meet the first prong of *Napue*—since he cannot show that the testimony was actually false—we need not analyze the remaining prongs.[14] The superior court's rejection of petitioner's claim was not contrary to clearly established law. Therefore, his claim should be denied.

## C.   California Court of Appeal's Denial of Habeas Petition

Petitioner argues that the Court of Appeal erred when it rejected his habeas petition as untimely under state procedural rules. ECF No. 1 at 10. Because the California Supreme Court summarily rejected this claim, we review that decision under the standard announced in *Greene*, 288 F.3d at 1088-89.

As a preliminary matter, "[a] federal habeas petition is not the proper vehicle for addressing the adequacy of process provided . . . in state post-conviction proceedings." *Silversky v. Frink*, 500 F. App'x 625, 626 (9th Cir. 2012). Moreover, we are bound on federal habeas review by a state court's interpretation of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine

---

[14] If we were to analyze the remaining prongs, petitioner would have difficulty showing that the prosecutor's statements were material, *i.e.*, that they affected the judgment of the jury. Petitioner's counsel sought to rebut the prosecution's theory of the case in his closing argument, attempting to cast doubt on Alwarafi's testimony and identification. ECF No. 21-5 at 133; 148. The jury was then free to make credibility determinations about all the evidence presented, including Alwarafi's testimony. *See Jackson v. Denno*, 378 U.S. 368, 386 (1964) (noting that questions of witness credibility are for the jury to resolve). Moreover, the inconsistencies in Alwarafi's testimony may have cast doubt on his credibility, advantaging petitioner.

1   state-court determinations on state-law questions.").  Therefore, we recommend that petitioner's

2   claim be denied.[15]

3   **III.   Certificate of Appealability**

4           A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district

5   court's denial of a petition; he may appeal only in limited circumstances.  *See* 28 U.S.C. § 2253;

6   *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  Rule 11 Governing § 2254 Cases requires a

7   district court to issue or deny a certificate of appealability when entering a final order adverse to a

8   petitioner.  *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th

9   Cir. 1997).  A certificate of appealability will not issue unless a petitioner makes "a substantial

10  showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard requires

11  the petitioner to show that "jurists of reason could disagree with the district court's resolution of

12  his constitutional claims or that jurists could conclude the issues presented are adequate to

13  deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327; *accord Slack v.*

14  *McDaniel*, 529 U.S. 473, 484 (2000).  Here, petitioner has not made a substantial showing of the

15  denial of a constitutional right.  Thus, we recommend that the court not issue a certificate of

16  appealability.

17  **IV.   Findings and Recommendations**

18          We recommend that the court deny the petition for a writ of habeas corpus, ECF No. 1,

19  and decline to issue a certificate of appealability.  These findings and recommendations are

20  submitted to the U.S. District Court judge presiding over this case under 28 U.S.C. § 636(b)(1)(B)

21  and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District

22  of California.  Within thirty days of the service of the findings and recommendations, petitioner

23  may file written objections to the findings and recommendations with the court and serve a copy

24  on all parties.  That document must be captioned "Objections to Magistrate Judge's Findings and

25

26  ───────────────

27  [15] Moreover, petitioner has given us no reason to believe that his constitutional rights were
    violated by the Court of Appeal's rejection of his habeas petition.  Despite the Court of Appeal's
    ruling, petitioner was able to present the same claim to the California Supreme Court in his
28  petition for review.  ECF No. 20 at 28.

Recommendations."  The district judge will then review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

IT IS SO ORDERED.

Dated:    September 2, 2020

UNITED STATES MAGISTRATE JUDGE

No. 206.